Original,
No. 4266.

## MOORE'S CASE.

Heard and argued October 21, 22, 1953.

Decided October 30, 1953.

*Louis C. Wyman*, Attorney General, for the complaint.

*Joseph Moore, pro se,* opposed.

DUNCAN, J. The proceedings for contempt which resulted in entry by the Superior Court on March 5, 1953, of an order adjudging the respondent in contempt for failure to comply. with a prior order of the court, and in his confinement to jail until he did comply, arose out of the litigation in which a decision was rendered by this court on January 6, 1953, in *Moore* v. *Eastman,* 98 N. H. 28. Much of the evidence in support of the complaint before us relates to the respondent's conduct with respect to that litigation. Following oral arguments in this court on November 6, 1952, a conversation between the respondent and opposing counsel concerning the payment of taxes upon the property involved led the respondent, in a "summation and argument" filed in this court on November 12, to charge opposing counsel with "blackmail," and with fraud in the preparation of the stipulation of June 7, 1951, which appears in part in the opinion cited above. These charges were answered by counsel in a supplemental brief, which also pointed out that no issue of fraud was before this court.

No useful purpose would be served by detailing the aspects of this dispute which were thus presented to this court by the memoranda, and by three motions for rehearing filed by the respondent following the decision in January, 1953, all of which were denied without opinion. In general, the position then and now taken by the respondent expresses his dissatisfaction because the stipulation did not provide for payment by Eastman of taxes assessed prior to June 7, 1951, and charges that failure of the stipulation to provide

for such payment was due to fraud on the part of opposing counsel in drafting the stipulation, and in particular paragraphs 2 and 3 thereof, not quoted in the reported case *supra*: "2. It is agreed that the defendant, Leone Eastman, may receive and retain all rents from the Enfield property up to and including the month of June, 1951. 3. The defendant, Leone Eastman, agrees to make no claim against the other co-tenants for any expenditures made by her on the property in question for taxes, insurance, repairs and improvements."

Two revisions of the original draft of the stipulation were prepared, because of objections as to form made by the respondent. The final draft bears a pen and ink alteration of paragraph 7 reserving to the defendant Eastman rights not involved in the litigation. This change was admittedly made at the insistence of the respondent. He concedes that he was to accept a quitclaim deed, but asserts that all taxes were to be paid by Eastman.

Following the decision of this court in *Moore* v. *Eastman, supra,* the respondent failed to comply with the order for specific performance of the stipulation which was then affirmed, and counsel moved that he be adjudged in contempt. He then sought to justify his noncompliance upon the same grounds of fraud, but was adjudged in contempt on March 5, 1953. He was thereupon confined to jail until March 8, 1953, when he complied with the order.

The evidence discloses that by writ dated February 5, 1953, the respondent brought a new action against Leone Eastman, in which a real estate attachment was made on that date. On April 3, 1953, trustee process on the writ was served upon a bank where the defendant had an account and upon the defendant, and the writ was entered at the May term of the Superior Court. The action has since been dismissed upon demurrer, following a hearing at which the respondent asserted "that the only thing at issue [was] . . . whether the contract was obtained by the fraudulent manipulation of the wording" of the stipulation; and so far as can be determined from the declaration and motions to amend, the action sought to perpetuate the litigation which the stipulation in *Moore* v. *Eastman, supra,* was designed to end. Similar conduct on the part of the respondent was before this court in 1949, in litigation which originated some six years before. *Moore* v. *Lebanon,* 96 N. H. 20.

We are satisfied that the respondent's signature to the stipulation, which bound him individually to accept a quitclaim deed of all of Eastman's right, title and interest, was fairly obtained, and that

he was satisfied with its provisions at the time. He claims that he was ignorant of any unpaid taxes until December, 1951, and that they were fraudulently concealed from him by counsel. The claim is discredited by a letter received in evidence at the contempt hearing, which the respondent had written to counsel on March 11, 1950, charging that their client had neglected to pay the taxes, and wilfully permitted the real estate to be sold for taxes. Furthermore, the evidence indicates that there were no tax liens on the one-fourth interest in the Enfield property conveyed to the respondent after he was adjudged in contempt; and that any lien upon the less valuable Canaan property, the value of which was not in dispute, was redeemable at any time prior to March 1, 1952.

Any questions concerning the form of the stipulation or of fraud in its preparation, were known to the respondent in the spring of 1952. So far as they were not presented in the proceedings before *Leahy*, J., which were later transferred to this court, such considerations are now foreclosed under established principles of *res judicata*, because they might then have been litigated. *Chesley* v. *Dunklee*, 77 N. H. 263; *Bottomly* v. *Parmenter*, 85 N. H. 322, 324.

The evidence established beyond doubt that the respondent entertains the view that any contract or undertaking produced by what he considers to be fraud or coercion, and any order of court in enforcement thereof, is "void *ab initio*" although never so adjudicated; and that he is free to disregard it. This appears from the statements made by the respondent himself in closing the hearing upon this complaint that "all orders, based on the fraudulent contract or deriving therefrom were void *ab initio*," and that he denied "ever knowingly or wilfully violating any agreement or Court order unless and until he discovered it to have been obtained by perjury or . . . fraud." The respondent's misconduct in this respect reveals at best a startling lack of regard for the judicial process, if not a deliberate purpose to abuse it.

The evidence of charges made by the respondent since June 15, 1953, against the Superior Court and counsel in a series of letters to the Attorney General discloses a readiness to charge misconduct on the part of others where reasonable grounds for such charges do not exist.

The respondent's conduct is and has been of such a nature as to make his continued practice at the bar a constant menace to the orderly and dignified administration of justice to which attorneys are obligated to contribute.

We find the complaints made by Moore against Superior Court Chief Justice Wheeler and attorneys Richard F. Upton and John F. Cronin to be groundless. If the conduct of the respondent himself of which complaint is made in these proceedings may be partly explainable in terms of his advancing years and state of health, such conduct should not be permitted to continue, and establishes his unfitness as an officer of the court to enjoy the privileges and perform the obligations of his office. R. L., c. 381, ss. 6, 8. See *In re Isserman*, 9 N. J. 269, 275. "Some action must be taken for the protection of the community." *Moore's Case*, 76 N. H. 227, 229, and cases cited. The order is that the respondent be indefinitely suspended from his office as an attorney.

*So ordered.*

All concurred.